JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CHRISTINA YUN | METRO COMMERCIAL REAL ESTATE, INC. |

(b) County of Residence of First Listed Plaintiff    Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Burlington
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Brian C. Farrell, Esq.
Console Mattiacci Law
1525 Locust St., 9th Fl., Philadelphia, PA 19102    215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & / ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability / ☐ 368 Asbestos Personal ☐ 340 Marine / Injury Product | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product / Liability Liability / **PERSONAL PROPERTY** | | ☐ 840 Trademark **LABOR** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle / ☐ 371 Truth in Lending | Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 195 Contract Product Liability | Product Liability / ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | Exchange |
| ☐ 196 Franchise | ☐ 360 Other Personal / Property Damage Injury / ☐ 385 Property Damage | Relations ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - / Product Liability | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | Medical Malpractice | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | Act ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment / ☐ 510 Motions to Vacate | | 26 USC 7609 | Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ / Sentence | | | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 530 General | **IMMIGRATION** | | State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| | Employment / **Other:** | ☐ 465 Other Immigration | | |
| | ☐ 446 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | Actions | | |
| | Other / ☐ 550 Civil Rights | | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - | | | |
| | / Conditions of | | | |
| | / Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e, et. seq. ("Title VII") and 29 U.S.C. §2601, et seq. ("FMLA")
Brief description of cause:
Sex discrimination; Retaliation; FMLA retaliation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
01/08/2018

SIGNATURE OF ATTORNEY OF RECORD

---

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CHRISTINA YUN**<br>**Harleysville, PA 19438**<br><br>            **Plaintiff,**<br><br>     **v.**<br><br>**METRO COMMERCIAL REAL**<br>**ESTATE, INC.**<br>**307 Fellowship Road,**<br>**Suite 300**<br>**Mt. Laurel, NJ 08054**<br><br>         **Defendant.** | **CIVIL ACTION NO.**<br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

<u>**COMPLAINT**</u>

## I.  <u>INTRODUCTION</u>

Plaintiff, Christina Yun ("Plaintiff"), brings this action against her former employer, Metro Commercial Real Estate, Inc. ("Defendant"), for unlawful discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"), and the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1, *et seq.* ("NJLAD").

## II.  <u>PARTIES</u>

1.  Plaintiff, Christina Yun, is an individual and a citizen of the Commonwealth of Pennsylvania.

2.  Plaintiff is female.

3.     Defendant, Metro Commercial Real Estate, Inc. ("Defendant") is a corporation with a principal place of business located at 307 Fellowship Road, Suite 300, Mt. Laurel, NJ 08054.

4.     Defendant is engaged in an industry affecting interstate commerce and regularly does business in the state of New Jersey.

5.     At all times material hereto, Defendant employed more than fifty (50) employees.

6.     At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

7.     At all times material hereto, Defendant acted as an employer within the meaning of the statutes which form the basis of this matter.

8.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes which form the basis of this matter.

## III.    JURISDICTION AND VENUE

9.     The causes of action which form the basis of this matter arise under Title VII, the FMLA, the PHRA, and NJLAD.

10.    The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

11.    The District Court has jurisdiction over Count II (FMLA) pursuant to 29 U.S.C. §2617(a)(2) and 28 U.S.C. §1331.

12.    The District Court has supplemental jurisdiction over Count III

(PHRA) and Count IV (NJLAD) pursuant to 28 U.S.C. §1367.

13.     Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. § 2000e-5(f)(3).

14.     On or about July 28, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of acts of discrimination and retaliation alleged herein.  This Charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").  Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

15.     On or about October 11, 2017, the EEOC issued to Plaintiff a Notice of Right to Sue for her Charge of Discrimination.  Attached hereto, incorporated herein and marked as Exhibit "2" is a true and correct copy of the Notice (with personal identifying information redacted).

16.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.     **FACTUAL ALLEGATIONS**

17.     Plaintiff was employed by Defendant from on or about April 19, 2015 until on or about July 13, 2017, the date of her unlawful termination.

18.     Throughout her employment with Defendant, Plaintiff held the position of Project Coordinator and worked out of Defendant's office located in Plymouth Meeting, Pennsylvania (hereinafter "Plymouth Meeting").

19.     At all times during her employment with Defendant, Plaintiff was a

loyal, dedicated, and hard-working employee who consistently performed her job duties in an excellent manner.

20.     As Project Coordinator, Plaintiff reported to Lauren McDermott ("McDermott"), Operations Director/Executive Assistant, who in turn reported to Thomas Londres ("Londres"), President and Chief Executive Officer.

21.     In or about October 2016, Plaintiff informed McDermott that she was pregnant.  In the same conversation, Plaintiff also informed McDermott that she intended to return to Defendant following the conclusion of her maternity leave and that she enjoyed working for Defendant.

22.     On or about January 18, 2017, McDermott asked Plaintiff via email for the date on which Plaintiff intended to commence maternity leave.  Plaintiff informed McDermott that she planned to work until April 21, 2017, four (4) days prior to her scheduled due-date of April 25, 2017.

23.     On or about February 8, 2017, McDermott called Plaintiff into a meeting.  During the meeting, McDermott, who knew that Plaintiff resided in Harleysville, Pennsylvania, abruptly informed Plaintiff that Defendant intended to transfer her position to Defendant's office located in Center City, Philadelphia.

24.     Also during the February 8, 2017 meeting, McDermott told Plaintiff that Defendant hired a new Project Coordinator to replace Plaintiff at Plymouth Meeting. According to McDermott, Plaintiff's replacement was scheduled to commence employment with Defendant in seven (7) days, i.e. February 15, 2017.

25.     McDermott further informed Plaintiff that Plaintiff would be required

4

to train this new Project Coordinator to support Brian Goodwin ("Goodwin"),
Senior Vice President, and Michael Murray ("Murray"), Senior Vice President,
both of whom Plaintiff had been previously supporting.

26.     Defendant's transfer of Plaintiff's position from Plymouth Meeting to
Philadelphia imposed a substantial burden on Plaintiff, who was at that point over
seven months pregnant. By way of example, the transfer added approximately
one (1) hour to Plaintiff's daily commute in each direction.

27.     Additionally, upon information and belief, the transfer would have
resulted in Plaintiff sustaining economic losses.

28.     At the conclusion of the February 8, 2017 meeting, McDermott
stated that she "would rather have [Plaintiff] quit than work with [Plaintiff] on a
better solution." McDermott then instructed Plaintiff to let her know by the end of
the week if Plaintiff "plan[ned] to proceed with this plan."

29.     Thereafter on or about February 8, 2017, Goodwin emailed
McDermott and stated that he was "extremely disappointed" and "surprise[d]" that
Defendant was transferring Plaintiff to Defendant's Philadelphia office without
having spoken to him before making the decision. Goodwin further stated that he
valued Plaintiff's work and how Plaintiff was performing, and that he was
displeased that McDermott had presented Plaintiff with the decision of
transferring to Defendant's Philadelphia office or resigning.

30.     Similarly, Murray emailed Londres on February 8, 2017 stating that
he thought transferring Plaintiff to Defendant's Philadelphia office was "the wrong
move." Murray also noted that Plaintiff was an asset to Defendant and that she

was "a big help to [him] and others in the [Plymouth Meeting] office."  Murray then asked Londres why he could not instead assign the new Project Coordinator to work out of the Philadelphia office.

31.     On or about February 10, 2017, Plaintiff emailed a letter to Londres and Rich Lukesh ("Lukesh"), Human Resources Director, in which she complained that the involuntary transfer was tantamount to pregnancy discrimination.

32.     In retaliation, on or about February 13, 2017, McDermott instructed Plaintiff to deduct certain time from her timesheet, indicating that Plaintiff would not be paid for the hours that Plaintiff informed brokers and coworkers about her impending involuntary transfer to Defendant's Philadelphia office.

33.     As further retaliation, in or about March 2017, Defendant stripped a number of Plaintiff's main accounts from her supervision and reassigned them to Pam Casalena ("Casalena"), the non-pregnant Project Coordinator who Defendant hired to replace Plaintiff at Defendant's Plymouth Meeting office. Plaintiff was further assigned to lower-level brokers with less significant accounts.

34.     On or about March 3, 2017, Defendant eliminated Kari Dickert's ("Dickert"), position as Marketing Director. At the time, Dickert was approximately eight (8) months pregnant.

35.     On or about March 16, 2017, Plaintiff complained to Lukesh that she was being treated in a more hostile and dismissive manner by her superiors as a result of her pregnancy. Plaintiff did not receive a response to her complaint.

36.     In or about late March 2017, Defendant terminated Casalena's

employment for poor performance.

37.     Following Casalena's termination, Plaintiff requested that she be permitted to replace Casalena by returning to her previous role as the permanent Project Coordinator for the Plymouth Meeting office. Defendant rejected Plaintiff's request and ultimately hired a non-pregnant individual to permanently replace Casalena.

38.     On or about April 12, 2017, Plaintiff commenced maternity leave pursuant to the Family and Medical Leave Act ("FMLA").

39.     On or about June 14, 2017, while out of work on maternity leave, Plaintiff emailed Defendant to reiterate that she would not be able to work out of Defendant's Philadelphia office but could still work out of Defendant's Plymouth Meeting office. Plaintiff further stated that it was her understanding that her job still existed in Plymouth Meeting, and that she wanted to return to that job. Plaintiff further complained that the involuntary transfer constituted pregnancy discrimination.

40.     On or about July 5, 2017, Plaintiff again complained that the involuntary transfer constituted pregnancy discrimination and retaliation for her previous complaints of pregnancy discrimination.

41.     On or about July 13, 2017, Plaintiff returned to work at Defendant's Plymouth Meeting location.  When Plaintiff arrived, Steve Niggemen ("Niggemen"), Executive Vice President, instructed Plaintiff to leave the premises.  Later that day, Defendant terminated Plaintiff's employment.

42.     Defendant's stated reason for terminating Plaintiff's employment

was that Plaintiff "ha[d] provided no acceptable reason for not returning to work and failing to report to [her] designated work location—Philadelphia—since [her] return from FMLA leave."

43.     Defendant' stated reason for Plaintiff's termination was pretext for unlawful discrimination and retaliation.

44.     Plaintiff's employment was terminated three (3) days after she returned to work following her maternity leave pursuant to the FMLA.

45.     Prior to Plaintiff disclosing her pregnancy to Defendant, Plaintiff had no indication that her job was in jeopardy or that her job would be relocated.

46.     Defendant's stated reason for Plaintiff's termination was pretext for unlawful discrimination and retaliation.

47.     Plaintiff's sex/pregnancy was a motivating and/or determinative factor in Defendant's discriminatory treatment of Plaintiff, including, but not limited to, Plaintiff's termination of employment and/or constructive discharge.

48.     Plaintiff's family caregiving responsibilities were a motivating and/or determinative factor in Defendant's discriminatory treatment of Plaintiff, including, but not limited to, Plaintiff's termination of employment and/or constructive discharge.

49.     Defendant retaliated against Plaintiff for exercising her right to take FMLA leave.

50.     Plaintiff's complaints of discrimination and retaliation were a motivating and/or determinative factor in Defendant's retaliatory treatment of Plaintiff, including, but not limited to, Plaintiff's termination of employment and/or

constructive discharge.

51.     Defendant failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

52.     The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

53.     The discriminatory and retaliatory conduct of Defendant, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

54.     As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

55.     Defendant acted with malice and/or reckless indifference to Plaintiff's protected rights.

56.     The conduct of Defendant, as set forth above, was outrageous under the circumstances and warrants the imposition of punitive damages against Defendant.

## COUNT I - Title VII

57.     Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

58.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

59.     Said violations were intentional and warrant the imposition of punitive damages.

60.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

61.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

62.     No previous application has been made for the relief requested herein.

## COUNT II – FMLA

63.     Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

64.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the FMLA.

65.     Said violations were not in good faith, and Defendant did not have reasonable grounds to believe that the foregoing acts were not in violation of the FMLA, thereby warranting the imposition of liquidated damages.

66.     As a direct and proximate result of Defendant's violations of the FMLA, Plaintiff has suffered damages and losses set forth herein and has incurred attorneys' fees and costs.

67.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's violations of the FMLA unless this Court grants the relief requested herein.

68.     No previous application has been made for the relief requested herein.

## COUNT III - PHRA

69.     Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

70.     Defendant, by the above improper and discriminatory and retaliatory acts, has violated the PHRA.

71.     Said violations were intentional and willful.

72.     As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees and costs.

73.     Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

74.     No previous application has been made for the relief requested herein.

**COUNT IV – NJLAD (in the alternative to the PHRA claim)**

75.    Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

76.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant violated the NJLAD.

77.    As a direct and proximate result of Defendant's discriminatory and retaliatory conduct in violation of the NJLAD, Plaintiff has sustained the injuries, damages, and losses set forth herein.

78.    Members of Defendant's upper management participated in, or were willfully indifferent to, Defendant's discriminatory and retaliatory treatment of Plaintiff, and Plaintiff is entitled to an award of punitive damages.

79.    Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful discrimination and retaliation in violation of the NJLAD.

80.    No previous application has been made for the relief requested herein.

**RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)    declaring the acts and practices complained of herein to be in violation of Title VII;

(b)    declaring the acts and practices complained of herein to be in violation of the FMLA;

(c)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(d)     declaring the acts and practices complained of herein to be in violation of NJLAD;

(e)     enjoining and permanently restraining the violations alleged herein;

(f)     entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

(g)     awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(h)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(i)     awarding punitive damages to Plaintiff under Title VII and NJLAD;

(j)     awarding liquidated damages to Plaintiff under the FMLA;

(k)     awarding Plaintiff such other damages as are appropriate under Title VII, the FMLA, the PHRA, and NJLAD;

(l)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and;

(m)    granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

CONSOLE MATTIACCI LAW LLC

Dated: January 8, 2018            BY:    _____

Stephen G. Console, Esquire
Brian C. Farrell, Esquire
1525 Locust St., 9th Floor
Philadelphia, PA 19102
(215) 545-7676
(215) 545-8211 (fax)

Attorney for Plaintiff,
Christina Yun

Exhibit 1

| CHARGE OF DISCRIMINATION | | AGENCY<br>Q  FEPA<br>X  EEOC | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | | | |

STATE OR LOCAL AGENCY: <u>Pennsylvania Human Relations Commission</u>

| NAME (Indicate Mr., **Ms.**, Mrs.)<br>**Christina Yun** | HOME TELEPHONE NUMBER *(Include Area Code)*<br>███████ |
|---|---|
| STREET ADDRESS<br>████████████ | CITY, STATE AND ZIP<br>Harleysville, PA 19438 | DATE OF BIRTH<br>█████████ |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**Metro Commercial;**<br>**Metro Commercial Real Estate, LLC** | NUMBER OF EMPLOYEES, MEMBERS<br>> 15 | TELEPHONE (Include Area Code)<br>(610) 825-5222 |
|---|---|---|
| STREET ADDRESS<br>660 West Germantown Pike, Suite LL 200 | CITY, STATE AND ZIP<br>Plymouth Meeting, PA 19462 | COUNTY<br>Montgomery |

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Q Race   Q Color   **X Sex**   Q Religion   Q National Origin<br>**X Retaliation**   Q Age   Q Disability   **X Other** *(Specify)* Pregnancy | DATE DISCRIMINATION TOOK PLACE<br><br>*Earliest*                    *Latest*  07/13/2017 |
|---|---|

**The Particulars Are:**

A.     1.     Relevant Work History

I was hired by Respondent on April 19, 2015 as a Project Coordinator.  I reported to Lauren McDermott (female), Operations Director/Executive Assistant.  McDermott reports to Thomas Londres (male), President and Chief Executive Officer.

In or about October 2016, I informed Respondent that I was pregnant.  In February 2017, Respondent advised me that I would be transferred to Respondent's Philadelphia office location, which would lengthen my commute by one (1) hour, and removed a portion of my job duties and responsibilities.  I complained that the transfer was discrimination based on my pregnancy.  Three (3) days after I returned to work from maternity leave, Respondent terminated my employment.  Respondent replaced me with a non-pregnant and non-complaining employee.

I consistently demonstrated excellent performance and dedication to Respondent.  I performed my duties in a highly-competent manner.  I have received "meets expectations" and "exceeds expectations" on my performance reviews.  Before informing Respondent of my pregnancy, I received positive feedback and compliments on my performance.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements) |
|---|---|
| | I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
| I declare under penalty or perjury that the foregoing is true and correct. | |
| Date:<br><br>7\|26\|17 | Charging Party (*Signature*): | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |

EEOC Charge of Discrimination
Page 2 of 4
Initials of Charging Party –

2.    Harm Summary

I have been discriminated against because of my sex (female) and my pregnancy, and have been retaliated against because of my complaints of Respondent's discriminatory conduct. Evidence of the discriminatory and retaliatory conduct to which I have been subjected includes, but is not limited to, the following:

(a)   In or about October 2016, I informed McDermott of my pregnancy. I informed McDermott that I intended to return to Respondent after my maternity leave, and that I enjoyed my job at Respondent.

(b)   In or about December 2016, Kari Dickert (female), Marketing Director, and I inquired about Respondent providing a pumping room for nursing mothers. Dickert was also pregnant. McDermott responded that she spoke with Londres about our inquiry, and Londres stated that Respondent "will figure it out when the time comes."

(c)   On or about January 4, 2017, I asked Rich Lukesh (male), Human Resources Director, if Respondent would provide short term disability insurance during maternity leave. Lukesh informed me that he would discuss the matter with Londres.

(d)   On January 18, 2017, McDermott emailed me, asking for the date I intended to go out on maternity leave. I informed McDermott that I planned on working until April 21, 2017, which was a few days before my April 25, 2017 due date.

(e)   On or about January 19, 2017, McDermott sent an email to my coworkers regarding my maternity leave.

(f)   On February 8, 2017, McDermott called me into a meeting. McDermott, who knew that I live in Harleysville, informed me that Respondent would be transferring me from Respondent's Plymouth Meeting office to Respondent's Philadelphia office. The transfer would add an hour to my commute each way. The stated reason for the transfer was that Respondent "need[s] a more experienced Project Coordinator there." The stated reason was false, as the Project Coordinator working at Respondent's Philadelphia office was more experienced than I was. McDermott informed me that another Project Coordinator had been hired to work at Respondent's Plymouth Meeting office, and would start on February 15, 2017. McDermott informed me that I would be required to train the new Project Coordinator, and that the new Project Coordinator and another Project Coordinator would support Brian Goodwin (male), Vice President, and Michael Murray (male), Senior Vice President, both of whom I had been supporting. When I explained that I would not be able to make the commute to Respondent's Philadelphia office, due to being pregnant, McDermott stated that Respondent "would rather have [me] quit than work with [me] on a better solution." McDermott instructed me to let her know if I "plan[ned] to proceed with this plan."

(g)   On February 8, 2017, Goodwin emailed Londres to inform him that Goodwin was "extremely disappointed" and "surprise[d]" that Respondent was transferring me to Respondent's Philadelphia office without speaking or consulting with Goodwin before making the decision. Goodwin expressed to Londres that he valued my work and how I was performing, and was displeased that Respondent presented me with the decision of transferring to Respondent's Philadelphia office or resigning.

EEOC Charge of Discrimination
Page 3 of 4
Initials of Charging Party –

(h) On February 8, 2017, Murray emailed Londres to inform him that Murray does not believe that transferring me to the Philadelphia office is appropriate, and asked Londres to reconsider his decision.  Murray stated that I am an asset to Respondent and that I am "a big help to [him] and others in the [Plymouth Meeting] office."  Murry asked why Respondent could not instead assign the new Project Coordinator to the Philadelphia office.

(i) On February 10, 2017, I emailed a written complaint to Londres and Lukesh, complaining that I am being discriminated against because of my pregnancy.

(j) On February 13, 2017, McDermott instructed me to deduct certain time from my timesheet, indicating that I would not be paid for the hours that I informed brokers and coworkers about my transfer to Respondent's Philadelphia office.

(k) On February 14, 2017, Londres provided me with a letter stating that my transfer to Respondent's Philadelphia office "was not made on any basis other than business reasons."  Londres confirmed that Respondent will be transferring me to the Philadelphia office when I return from maternity leave, and that I would immediately be required to begin answering the Philadelphia office's phone at the Plymouth Meeting office.

(l) In February and March 2017, certain of my main accounts, brokers, and job duties were taken away and assigned to Pam Casalena (female), Project Coordinator, the non-pregnant employee that Respondent hired to replace me at Respondent's Plymouth Meeting location.  I was assigned less significant accounts and brokers.

(m) On March 3, 2017, Dickert's position was eliminated.  Dickert was eight (8) months pregnant when Respondent eliminated her position.  Londres sent an email to all employees announcing that Dickert would "be leaving" Respondent.

(n) On March 16, 2017, I complained to Lukesh that I have been treated in a more hostile and dismissive manner than other employees since having informed Respondent of my pregnancy and since having complained about pregnancy discrimination.  I did not receive a response to my complaint.

(o) On March 28, 2017, Respondent sent an email to the entire company, stating that I would be on maternity leave, beginning April 12, 2017.

(p) On April 12, 2017, I went out on maternity leave.  I was provided no instruction as to what duties I would be performing when I returned from maternity leave.

(q) On June 14, 2017, I emailed Respondent, reiterating that I will not be able to work out of Respondent's Philadelphia office, but am able to work out of Respondent's Plymouth Meeting office, as I had been doing.  I stated that it is my understanding that my job still exists in Plymouth Meeting, and that I would like to return to that job.  I complained that the transfer is pregnancy discrimination and an effort to force me out of my job.

(r) On July 5, 2017, I received a response from Lukesh, stating that Respondent requires me to report to its Philadelphia office on July 11, 2017, when I return from my maternity leave.

EEOC Charge of Discrimination
Page 4 of 4
Initials of Charging Party – *OY*

(s) On July 5, 2017, I responded to Lukesh, stating that, as I had previously informed Respondent, I am not able to work from the Philadelphia office but am willing and able to work from Respondent's Plymouth Meeting office as I had been doing successfully for Respondent. I informed Respondent that I would be reporting to Plymouth Meeting on July 11, 2017. I complained that the transfer is pregnancy discrimination and retaliation for my complaints of pregnancy discrimination.

(t) On July 11, 2017, following my maternity leave, I returned to work at Respondent's Plymouth Meeting location. When I arrived, Lukesh was present and told me that I could not stay there, so I left.

(u) On July 12, 2017, I returned to work at Respondent's Plymouth Meeting location. When I arrived, Lukesh was present and told me that I could not stay there, so I left.

(v) On July 13, 2017, I returned to work at Respondent's Plymouth Meeting location. When I arrived, I was terminated on the spot, effective immediately. Respondent presented me with a letter signed by Londres, stating that I "have provided no acceptable reason for not returning to work and failing to report to [my] designated work location—Philadelphia—since [my] return from FMLA leave."

(w) I was terminated three (3) days after I returned to Respondent following my maternity leave.

(x) Before I informed Respondent I was pregnant, I had no indication that my job was in jeopardy or that my job would be relocated.

(y) Upon information and belief, Respondent does not target or treat in the same way similarly-situated male or non-pregnant females.

(z) Respondent treats non-pregnant employees in a more favorable and preferential manner than it treats pregnant employees.

B.   1.   Respondents' Stated Reasons

(a) Respondent's stated reason for transferring me to another office location, that Respondent needed a more experienced Project Coordinator there, is pretext for sex and pregnancy discrimination.

(b) Respondent's stated reason for terminating my employment, that I provided no acceptable reason for not returning to work and failing to report to my designated work location—Philadelphia—since my return from FMLA leave," is pretext for sex and pregnancy discrimination and retaliation because of my complaints of pregnancy discrimination.

C.   1.   Statutes and Bases for Allegations

I believe that Respondent has discriminated against me based on my sex (female) and my pregnancy, and has retaliated against me because of my complaints about Respondent's discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"); and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), as set forth herein.

INFORMATION FOR COMPLAINANTS & ELECTION OPTION
TO DUAL FILE WITH THE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

**Christina Yun v. Metro Commercial; Metro Commercial Real Estate, LLC**

EEOC No. _____

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act.  Filing your charge with PHRC   protects your state rights, especially since there may be circumstances in which state and federal laws   and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are   unlawful discrimination.  If PHRC determines that your PHRC complaint is untimely, it will be   dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with   your signature under the verification below, will constitute filing with the PHRC.  You have chosen   EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept   EEOC's finding.  If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to   file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency,   the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is   required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file   your complaint in state court.  PHRC will inform you of these rights and obligations at that time.

**[Sign and date appropriate request below]**

_X_   I want my charge filed with PHRC.  I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint.  I request EEOC to transmit it to PHRC.

_X___   *I understand that false statements in this complaint are made subject to the penalties of 18    Pa. C.S. § 4904, relating to unsworn falsification to authorities.*

X _____   7/25/18
                    Signature and Date

____   I do not want my charge dual filed with PHRC

_____
                    Signature and Date

# Exhibit 2

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: Christina Yun | From: Philadelphia District Office |
|---|---|
| Harleysville, PA 19438 | 801 Market Street |
| | Suite 1300 |
| | Philadelphia, PA 19107 |

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | Legal Unit, | |
| 530-2017-03426 | Legal Technician | (215) 440-2828 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:**  This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Kevin J. Berry,
Acting District Director

10/11/17

*(Date Mailed)*

Enclosures(s)

cc:   Christine Scotti, Executive Vice President        Emily Derstine Friesen, Esq.
      METRO COMMERCIAL REAL ESTATE, INC.            CONSOLE MATTIACCI LAW
      307 Fellowship Road, Suite 300                 1525 Locust St, 9th Floor
      Mount Laurel, NJ 08054                          Philadelphia, PA 19102